OPINION OF THE COURT
Daniel P. Fitzgerald, J.
The defendant, currently charged with possession of an imitation pistol pursuant to subdivision g of section 436-5.0 of the Administrative Code of the City of New York, moves for an order pursuant to CPL 170.30 (subd 1, par [a]), dismissing the accusatory instrument on the ground that the pistol found in defendant’s possession is not an imitation pistol within the meaning of the section charged.
The defendant is alleged to have possessed a .22 calibre, silver starter’s pistol which had been altered to accept live cartridges and actually loaded with live rounds of ammunition at the time of defendant’s arrest. Defendant was originally charged with criminal possession of a weapon in the third degree (Penal Law, § 265.02), a class D felony. However, the ballistics report determined the gun was inoperable since the firing pin could not hit the primers with sufficient force to ignite the powder. The District Attorney’s office therefore reduced the charge to subdivision g of section 436-5.0 of the Administrative Code, a class A misdemeanor, since an inoperable pistol is not a firearm within the meaning of the Penal Law statute originally charged (People v Grillo, 15 AD2d 502, affd without opn 11 NY2d 841).
*596 The relevant portion of the Administrative Code section charged provides that: “It shall be unlawful for any person to * * * possess * * * any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel.” (Administrative Code, § 436-5.0, subd g.)
The issue before this court is whether a starter’s pistol, altered to accept live cartridges but inoperable, is an “imitation” pistol within the meaning of that provision.[1] The cases involving inoperable, real pistols provide the most relevant analysis; yet those cases reach polarized results.
Defendant contends that the theory and holding in People v Rivers (76 Misc 2d 972) control the determination of the instant motion. Certainly Rivers structures a logical analysis and reaches what appears to be a correct interpretation on its facts, concluding that an inoperable, real pistol is not an “imitation” pistol within the meaning of the provision. Rivers draws extensively from the legislative history to emphasize the city council’s intent to control by this section not the actual weapons themselves but only toys, imitation guns, and “ ‘models so closely copied from actual weapons as not to be readily discernible as toys.’ ” (People v Rivers, supra, at p 974, citing Proceedings of Council of City of NY, vol 1, p 296, Jan., 1955 to June, 1955.) Moreover, the plain meaning of the word “imitation” is something that is made as only a copy or an artificial likeness of the actual item, and Rivers graphically notes (p 975) that an inoperable or defective toaster would not be called a copy or “imitation” of a real toaster.
*597 Rivers (supra) resisted the temptation to legislate judicially; to have held that inoperable, real guns are proscribed by the provision as “imitation” guns would torture the plain meaning of the provision and ignore the legislative history. However, the cases opposing the Rivers analysis and concluding that inoperable, real pistols are truly “imitation” pistols evoke a certain sympathetic response. They note that these inoperable, real pistols can be used just as easily for deceptive, unlawful purposes as toy or model guns (see, e.g., People v Pearson, 85 Misc 2d 1029; People v Davis, 82 Misc 2d 947). There is no denying the truth of such a statement. Indeed there is language in the legislative history that expresses a similar purpose for the code section: “the prevention of the * * * possession and use of toy pistols which are so closely imitative of real ones as to be used or usable for nefarious purposes.” (Proceedings of Council of City of NY, vol 1, p 24, Jan., 1955 to June, 1955.) Language such as this implicitly contradicts some of the language in the section itself and lends support to the reasoning in those cases that disagree with Rivers. Yet the words in any statute must be given their natural meaning (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94). Additionally penal statutes must be strictly construed against the State (McKinney’s Cons Laws of NY, Book 1, Statutes, § 271). And viewing the legislative history of the instant statute as a whole, it cannot be said that the language of the statute so perverts the legislative intent that the courts should depart from the natural meaning of the statutory language (McKinney’s Cons Laws of NY, Book 1, Statutes, § 111).
Clearly, though, the city council has created an anomalous situation: the possession of a toy or imitation pistol is illegal, yet possession of a defective actual pistol is not. But until the city council expands the code section beyond applicability to only toys and imitation pistols and includes inoperable real weapons, the courts should not conjecture about the reasons for the city council’s omission nor “redraft” the provision for them.
But the gun at issue in the instant motion is not an inoperable, real pistol. It was not originally an authentic .22 calibre pistol. It was initially designed as a starter’s *598 pistol and was intended to serve that particular function, unregulated by either the Penal Law or the Administrative Code. However, sometime after its original manufacture, it was substantially altered; its barrel was unplugged and bored out so that it resembled that of an actual .22 calibre pistol.[2]
The holding in Rivers (supra) is not applicable to the gun at issue here. The Rivers objection to calling a defective, real gun a “copy” or “imitation” of a real gun is anchored in linguistics (although its opponents would prefer “semantics”); that is, no item is transmuted into a “copy” or “imitation” of itself simply because it passively lapses into a defective state. Rather, for any item to become a “copy” or “imitation” of another item, certain intentional artistry is necessary. A “copy” can be created either in its entirety out of nothing or by deliberately and physically changing an existing item to imitate another,-different item. But either way, some intentional shaping or altering must take place. This is what occurred to the gun here. The alterations made to what was originally a starter’s pistol were sufficiently extensive to transform that starter’s pistol into an “imitation” .22 calibre pistol; it now substantially duplicates an actual .22 calibre pistol in appearance. In its present condition, substantially duplicating the appearance of an actual pistol, its possession is proscribed by subdivision g of section 436.50 of the Administrative Code. Therefore, defendant’s motion is denied.

. We are not concerned here with the definition of an “imitation” pistol as used in subdivision (2) of section 265.01 of the Penal Law; there the pistol is defined within the reality of its use. The Administrative Code, however, contemplates a per se violation for its possession and is concerned solely with its appearance (see People v Webb, 78 Mise 2d 253).

. A hearing was held for the purpose of viewing the type of alterations made to the starter’s pistol.